Opinión disidente emitida por el
Juez Asociado Señor Feliberti Cintrón.
Por estar conforme con la Resolución y la Sentencia Enmendada emitidas por el Tribunal de Apelaciones el 12 de abril de 2013, y entender que los bienes privativos de los cónyuges responden subsidiariamente por deudas gananciales que hayan surgido como resultado de la conducta intencional grave de ambos, respetuosamente, disiento. Veamos.
I
A pesar de que la controversia que se presenta a través de este recurso es un tanto limitada, es menester repasar el trasfondo fáctico y procesal del litigio para poder resolverla.
El 2 de abril de 2005, el Sr. Héctor Luis Báez Rivera y la Sra. Nancy Casanova Vázquez (recurridos o compradores), conjuntamente con el Sr. Víctor Roberto Fernández Ramos (peticionario o señor Fernández) y su esposa, Sra. Teresa Guillén Lugo (señora Guillén) (esposos Fernández-Guillén), suscribieron un contrato titulado Recibos de Pagos y *206 Conciliación de Hipoteca.(1) Mediante este acuerdo, los recurridos adquirieron un solar de aproximadamente 2,500 metros cuadrados a ser segregados de una finca matriz heredada por el señor Fernández y sus hermanos.(2)
En el mencionado documento se incluyó la siguiente cláusula como “Nota Especial”:
Esta finca est[á] sujeta a ser segregada por los Compradores, o sea los gastos de los Ingenieros y de los Abogados, (segregación y los documentos legales que sean necesarios serán por cuenta de los compradores hasta independizar estos 2,500 metros Cuadrados Aproximados (Ver Plano), de la finca principal de la cual será segregada). Esto constituye el acuerdo principal de esta compraventa.
Las partes pactaron, además, que la escritura correspondiente sería otorgada cuando los compradores lo solicitaran.
El 9 de agosto de 2007, los recurridos presentaron una Demanda en contra de los esposos Fernández-Guillén en la cual solicitaron el cumplimiento del contrato o, en la alternativa, la nulidad del contrato y el pago de daños y perjuicios. Oportunamente, se celebró el juicio para ventilar las controversias planteadas y el Tribunal de Primera Instancia dictó Sentencia el 16 de marzo de 2010. Según se desprende de dicho dictamen, los compradores comenzaron a realizar los pagos acordados, construyeron una residencia en el solar recién adquirido, llevaron a cabo mejoras en la propiedad, y sembraron árboles y frutos menores. Igualmente, acudieron a las oficinas del municipio de Caguas para someter la correspondiente solicitud de segregación. No obstante, allí se les informó que esto no era viable *207 puesto que la zonificación del predio no lo permitía. Quedó establecido que de haber sabido que la segregación no era posible, los recurridos no hubiesen comprado el solar.
De otra parte, conforme al testimonio creído por el juzgador, desde el 2003, es decir, dos (2) años previos a la compraventa, los esposos Fernández-Guillén tenían pleno conocimiento de que el solar vendido no podría ser segregado debido a su zonificación agrícola.(3)
A base de la evidencia que le fue presentada, el juez de instancia resolvió que “las gestiones que hicieron los esposos Fernández-Guillén para venderle el solar a los demandantes, a sabiendas de que el mismo no podía segregarse, constituyen maquinaciones, tretas y engaños, que vician el consentimiento ofrecido por los demandantes en el contrato otorgado”.(4)
Concluyó, por lo tanto, que los esposos Fernández-Guillén incurrieron en conducta dolosa tal que vició el consentimiento de los recurridos y provocó la nulidad del contrato. Dispuso igualmente que, al estar los esposos Fernández-Guillén imposibilitados de entregar la propiedad vendida por no poder segregarse, el contrato carecía de causa. A base de lo anterior, determinó que el señor Fernández, su esposa y la Sociedad Legal de Gananciales compuesta por ambos, venían llamados a responder por los daños y perjuicios causados por el incumplimiento de los términos del contrato, según provisto en el Artículo 1054 del Código Civil, 31 LPRA see. 3018 (Art. 1054 del Código Civil).(5)
A tono con sus hallazgos, el tribunal a quo ordenó la devolución de las contraprestaciones, así como el rembolso *208 a los compradores de los gastos en que se incurrió en la edificación, las siembras y las mejoras efectuadas de buena fe en el predio, con sus respectivos intereses, además de una indemnización de $100,000 a cada uno de los recurridos en concepto de daños y perjuicios.
Por último, el Tribunal de Primera Instancia impuso el pago de honorarios de abogado ascendentes a $50,000 por la actitud temeraria desplegada por los esposos Fernández-Guillén durante el trámite judicial. De este modo, la totalidad de la Sentencia sumó $352,468.(6)
Mediante Sentencia de 16 de diciembre de 2011, el Tribunal de Apelaciones, esencialmente, confirmó las determinaciones del foro primario, así como la responsabilidad del señor Fernández, su esposa y la Sociedad Legal de Gananciales compuesta por ellos, basado en su conducta contraria a las disposiciones del Art. 1054 del Código Civil. No obstante, clarificó que la nulidad del contrato provenía del dolo y no de la ausencia de causa en el contrato. De otra parte, redujo a $50,000 la compensación en concepto de daños y angustias mentales otorgada a cada uno de los recurridos, y a $12,000 el monto de los honorarios de abogado concedidos por el foro primario. A base de las determinaciones del Tribunal de Apelaciones, la deuda total en concepto de la Sentencia en cuestión se redujo a $214,468.
El 3 de julio de 2012, ya advenida final y firme la determinación antes descrita, la señora Guillén presentó una petición para acogerse a la protección del Capítulo 13 del *209 Código de Quiebras federal (Código de Quiebras). En la solicitud no incluyó a su esposo, el señor Fernández. Surge de los documentos sometidos ante el Tribunal de Quiebras que se designaron $214,000 correspondientes a la Sentencia antes aludida como deuda no asegurada y sin prioridad —unsecured nonpriority claim—.
En vista de los procedimientos de quiebra, el 4 de septiembre de 2012, el foro primario emitió una Resolución en la que ordenó la paralización de los procedimientos y se reservó jurisdicción para decretar su reapertura posteriormente. Más adelante, el tribunal de instancia acogió los planteamientos de los recurridos, según sometidos en una moción de reconsideración, por lo que el 25 de septiembre de 2012 emitió una Resolución Enmendada en la que dejó sin efecto parcialmente la paralización y permitió que continuaran los procedimientos con relación al señor Fernández y la Sociedad Legal de Gananciales compuesta con su señora esposa.
Inconforme, el señor Fernández recurrió al Tribunal de Apelaciones. Inicialmente, el foro apelativo intermedio ordenó paralizar los procedimientos en su totalidad. Véase Sentencia de 14 de febrero de 2013. No obstante, reconsideró su determinación y, mediante Resolución y Sentencia Enmendada de 12 de abril de 2013, dejó sin efecto la paralización decretada únicamente respecto a los bienes privativos del señor Fernández. De este modo, permitió que continuaran los trámites de ejecución en contra del señor Fernández para satisfacer con sus bienes propios el total de los dineros adeudados.
El señor Fernández acudió entonces ante este Foro. El 25 de octubre de 2013 expedimos el auto de certiorari y, posteriormente, las partes sometieron sus respectivos alegatos.
*210 II
El peticionario aduce, primeramente, que erró el Tribunal de Apelaciones al considerar la deuda por Sentencia como suya personal y llamarlo a responder solidariamente frente a los acreedores con su patrimonio privativo.
Indica, además, que de confirmarse la determinación recurrida, se afectarían los pagos al plan aprobado por el Tribunal de Quiebras, ya que parte de los ingresos provenientes de frutos y rentas de sus bienes privativos se utilizan para costearlo.
III

Derecho aplicable

A. El dolo
El consentimiento de las partes es requisito esencial para la validez de un contrato. Véase Art. 1213 del Código Civil, 31 LPRA see. 3391. Tanto es así que, de encontrarse afectado, podrá ocasionar la nulidad del negocio jurídico. Rodríguez Ramos et al. v. ELA et al., 190 DPR 448, 455 (2014); S.L.G. Ortiz-Alvarado v. Great American, 182 DPR 48, 62-63 (2011); García Reyes v. Cruz Auto Corp., 173 DPR 870, 885—886 (2008); Pérez Rosa v. Morales Rosado, 172 DPR 216, 228-229 (2007); Bosques v. Echevarría, 162 DPR 830, 836 (2004).
El dolo aparece reseñado en el Código Civil como una de las posibles causas de vicio del consentimiento. Se define como el uso de “palabras o maquinaciones insidiosas de parte de uno de los contratantes [con el propósito de inducir al] otro a celebrar un contrato que, sin ellas, no hubiera hecho”. Art. 1221 del Código Civil, 31 LPRA see. 3408. Cabe distinguir el dolus malus o dolo grave, que provoca la nulidad de la relación contractual, del dolo incidental, que únicamente da derecho a una indemnización en daños y perjuicios y no afecta la validez del acuerdo conforme esti *211 pula el Artículo 1222 del Código Civil, 31 LPRA sec. 3409 (Art. 1222 del Código Civil). Véanse: S.L.G. Ortiz-Alvarado v. Great American, supra, págs. 63-64; Pérez Rosa v. Morales Rosado, supra, págs. 229-230; Bosques v. Echevarría, supra, pág. 836; Colón v. Promo Motor Imports, Inc., 144 DPR 659, 666-667 (1997).
B. La Sociedad Legal de Gananciales
La Sociedad Legal de Gananciales es el régimen económico que habitualmente regula la institución del matrimonio en Puerto Rico. Montalván v. Rodríguez, 161 DPR 411, 420 (2004). Tiene como característica principal el que los cónyuges figuran como codueños y administradores de todo el patrimonio matrimonial sin adscribírsele cuotas específicas a cada uno. Roselló Puig v. Rodríguez Cruz, 183 DPR 81, 93 (2011); Montalván v. Rodríguez, supra. Se le ha reconocido como una entidad jurídica sui generis, separada y distinta de los cónyuges que la componen, aunque no cuenta con el mismo grado de personalidad jurídica característico de las sociedades ordinarias o entidades corporativas. Reyes v. Cantera Ramos, Inc., 139 DPR 925, 929 (1996); Int’l Charter Mortgage Corp. v. Registrador, 110 DPR 862, 864 (1981). El régimen ganancial opera independiente de los bienes personales de sus miembros. Pauneto v. Núñez, 115 DPR 591, 597 (1984); García v. Montero Saldaña, 107 DPR 319 (1978). Es decir, el patrimonio individual de cada cónyuge funciona separado del de la sociedad, por lo que se “rechaza una norma de solidaridad entre los cónyuges y la sociedad”. Pauneto v. Núñez, supra, pág. 597.
C. Deudas gananciales
Los Artículos 1308 y 1310 del Código Civil, respectivamente, regulan las responsabilidades y deudas de la sociedad legal de gananciales. 31 LPRA sees. 3661 y 3663 (Arts. 1308 y 1310 del Código Civil). El Art. 1308 del Código Civil estipula, entre otros, que “las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyu *212 ges” se reputan gananciales.(7) Este precepto comprende obligaciones en las cuales haya incurrido alguno de los esposos donde la masa ganancial resulta responsable en caso de incumplimiento. Orta v. Padilla Ayala, 131 DPR 227, 255 (1992). “El Art. 1308 [del Código Civil] trata sobre una obligación genérica de contenido patrimonial que confiere un derecho de crédito al acreedor contra el patrimonio del deudor, ejecutable por la vía forzosa en caso de incumplimiento”. WRC Props., Inc. v. Santana, 116 DPR 127, 134 (1985).
A pesar de que le cobija una presunción de naturaleza ganancial, de ninguna manera se puede entender que toda gestión obligatoria por parte de uno de los cónyuges vincula indefectiblemente a la sociedad de bienes gananciales por el mero hecho de estar casado bajo este régimen. A través de nuestra jurisprudencia hemos podido refinar los contornos de la responsabilidad ganancial según provista en el Art. 1308 del Código Civil. La naturaleza privativa o ganancial de la obligación dependerá de los hechos específicos de cada caso.
Así pues, para poder hacer esta determinación se examinarán los hechos particulares del caso según los criterios siguientes: (l)“la deuda u obligación debe servir a un interés de la familia y no estar predicada en un ánimo fraudulento *213 u oculto de perjudicar a uno de los cónyuges [...]”;(8) (2) el cónyuge o la Sociedad de Bienes Gananciales que niegue responsabilidad tiene el peso de la prueba, y (3) si se logra controvertir la presunción, responderán los bienes gananciales subsidiariamente previa excusión de bienes, según provisto en el Art. 1310 del Código Civil.(9)
Debido a la presunción de que la deuda u obligación es ganancial por haberse contraído durante la vigencia del matrimonio, corresponde al cónyuge que entiende que existe alguna de las excepciones antes mencionadas presentar la prueba necesaria para controvertirla y de este modo proteger el patrimonio ganancial en primera instancia.
Por su parte, el Art. 1310 del Código Civil establece como privativas las deudas contraídas por los cónyuges previo al matrimonio, así como las multas y condenas pecuniarias que le fuesen impuestas.(10) Las multas y condenas pecuniarias a las que se refiere este artículo incluyen la reparación de daños causados por culpa o negligencia. A. de Cossio y Corral, La sociedad de gananciales, Madrid, Instituto Nacional de Estudios Jurídicos, 1963, pág. 98.
Puig Brutau distingue la naturaleza de las deudas comprendidas en ambos artículos de la siguiente manera. Mientras el primer inciso del “ [A] r tí culo 1.408 [correspondiente al Art. 1308 nuestro] protege la justa expectativa de quienes son acreedores por haber contratado voluntariamente con el marido [...], el [A]rt. 1.410 [correspondienteal Art. 1310 *214 nuestro] contempla el caso de los acreedores que [...] han pasado a serlo de manera involuntaria [...]”. J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1967, T. IV, Vol. I, pág. 712.
EÍ Art. 1310 del Código Civil dispone, además, que cuando la responsabilidad impuesta sea privativa, la sociedad de gananciales responde frente a un tercero de manera subsidiaria, previa excusión de bienes, cuando el cónyuge responsable no tenga bienes propios para responder, o su patrimonio no sea suficiente para satisfacer la deuda. Quiñones López v. Manzano Pozas, 141 DPR 139, 169 (1996); Cruz Viera v. Registrador, 118 DPR 911, 915 (1987).
Se justifica el alcance subsidiario de los bienes gananciales dado la importancia de reparar el daño causado.
El precepto se presenta tan natural, que a primera vista no puede menos de sentirse su justicia. La sociedad no es la obligada al pago, pero median intereses legítimos, hay acreedores que no deben perder sus créditos, hay que reparar un mal o un daño, o indemnizar un peijuicio, y la ley, ante la carencia de bienes privativos del cónyuge deudor o responsable, y la existencia de gananciales sobrantes, ordena el pago, la reparación o la indemnización que procedan a costa de la sociedad, pero disponiendo que en su día se le descuente a ese cónyuge en su respectivo haber. J.M. Manresa, Comentarios al Código Civil español, 6ta ed. rev., Madrid, Ed. Reus, 1969, T. IX, pág. 769.
En casos de negligencia conforme al Artículo 1802 del Código Civil, la naturaleza de la obligación —ya sea individual o ganancial— dependerá de los hechos que dieron su origen. 31 LPRA see. 5141 (Art. 1802 del Código Civil). Si la responsabilidad surge como parte de una actividad beneficiosa para la masa ganancial, ordinariamente la deuda se reputará ganancial. Rosario v. Dist. Kikuet, Inc., 151 DPR 634, 646-647 (2000); Quiñones López v. Manzano Pozas, supra, pág. 167; Cruz Viera v. Registrador, supra, pág. 915; Asociación de Propietarios v. Santa Bárbara Co., 112 DPR 33, 49 (1982); García v. Montero Saldaña, supra, págs. 341-342.
*215 D. Culpa contractual
El factor determinante que distingue la culpa contractual predicada en el Art. 1054 del Código Civil de la extra-contractual provista en el Art. 1802 del mismo código consiste en la existencia de una relación previa entre la víctima y el causante del daño. Las acciones ex contractu persiguen compensar daños derivados del incumplimiento de obligaciones pactadas, lo que necesariamente exige “que al daño le preceda una relación jurídica entre las partes concernidas”. Maderas Tratadas v. Sun Alliance et al., 185 DPR 880, 909 (2012). Véase Ramos v. Orientalist Rattan Furnt, Inc., 130 DPR 712, 721 (1992). Por su parte, las acciones ex delicto surgen del principio de convivencia social de no causar daño a los demás y no se requiere que las partes estén ligadas por una relación jurídica anterior. Maderas Tratadas v. Sun Alliance et al., supra, pág. 908; Ramos v. Orientalist Rattan Furnt., Inc., supra.
E. Quiebra
El Capítulo 13 del Código de Quiebras está diseñado para individuos que cuentan con ingresos regulares. Este esquema normativo persigue la rehabilitación económica del deudor, permitiéndole retener sus propiedades si demuestra capacidad para pagar, con sus ingresos futuros, aquellas cantidades fijadas por el Tribunal de Quiebras. 8 Collier on Bankruptcy Sec. 1300.02 (16ta ed. 2010).
Como resultado de la presentación de una petición de quiebra, surge un caudal (estate) compuesto del patrimonio del deudor. En aquellas jurisdicciones en las que opera el régimen de Sociedad Legal de Gananciales, se incluyen los intereses de ambos cónyuges en la masa ganancial como parte del caudal cuando el cónyuge deudor tiene cierto grado de control sobre los bienes gananciales. Véase 11 USC see. 541.(11) Esto ocurre aún en aquellos casos en que *216 solamente uno de los cónyuges se haya acogido al procedimiento de quiebra. 1 Ginsberg & Martin on Bankruptcy Sec. 5.02 [B] (5ta ed. Suppl. 2014-1).
Conforme con lo dispuesto en la Sección 362 del Código de Quiebras, 11 USC see. 362 (Sec. 362 del Código de Quiebras),(12) al someter la petición se paraliza automáticamente todo proceso judicial o extrajudicial de cobro de dinero en contra del deudor, incluso la ejecución de sentencias obtenidas previo al inicio del caso.(13) Peerles Oil v. Hnos. Torres Pérez, 186 DPR 239, 255 (2012); Marrero Rosado v. Marrero Rosado, 178 DPR 476, 490-491 (2010). De esta manera, se protege el caudal del deudor para el beneficio de los acreedores, a la vez que se le brinda resguardo de las gestiones de cobro. Collier on Bankruptcy, supra, Vol. 3, Sec. 362.03[4].
El pago a los acreedores del deudor se hará según lo es *217 tipulado en un Plan aprobado por el Tribunal de Quiebras, el cual no podrá extenderse por un término mayor de cinco años. 11 USC sec. 1322(d). Al cabo de este periodo, si el deudor ha cumplido a cabalidad con sus términos, se le concede el descargo (discharge) de las deudas comprendidas en el Plan que no estén regidas por alguna exención o excepción provista por el Código de Quiebras. 11 USC sec. 1328; Ginsberg & Martin on Bankruptcy, supra, Vol. 2, Sec. 15.05[D] (5ta ed. Suppl. 2013-3), y Sec. 15.06[B] (Suppl. 2013-3).
Una vez se ordena el descargo, entra en vigor un injunction permanente conforme dispone la Sección 524(a) del Código de Quiebras, 11 USC sec. 524(a),(14) el cual sustituye la paralización inicial provista en la Sec. 362 del Código de Quiebras. Este interdicto opera sobre los bienes futuros del deudor, tanto privativos como gananciales, y le exime a perpetuidad del cobro de las deudas descargadas. Collier on Bankruptcy, supra, Vol. 3, Sec. 362.06[2]; Ginsberg & Martin on Bankruptcy, supra, Vol. 1, Sec. 3.07[B] (5ta ed. Suppl. 2014-1). El efecto del descargo se limita a proteger al deudor, tanto en su patrimonio privativo como la masa ganancial. Consiguientemente, no elimina las deudas que fueron objeto de descargo en el proceso de quiebra; éstas subsisten. R.G. Heston, Discharge—what Discharge, 42-Dec. Orange County Law, 36 (2000).
Como resultado, nada impide a los acreedores cobrar su acreencia de propiedad privativa del cónyuge que no se *218 acogió a quiebra si la ley local lo permite. Collier Family Law and the Bankruptcy Code Sec. 4.08 (2015). En otras palabras, la protección del Código de Quiebras carece de efecto alguno sobre el cónyuge que no se acogió a quiebra en su carácter individual y en sus bienes privativos. Campolieto v. Anaya, 142 DPR 582, 592 (1998). “Because the nondebtor spouse is not personally discharged, his separate property remains liable for all debts for which he is personally liable”. (Cita omitida). J. Henderson, For Better or for Worse: Liability of Community Property after Bankruptcy, 29 Idaho L. Rev. 893, 902 (1992-1993). “ ‘Section 524(a)(3) [...] is not a discharge of personal liability for the nonfiling spouse’ ”. In re Moore, 318 B.R. 679, 681 (Bkrtcy. W.D. Wis. 2004) (citando In re Schmiedel, 236 B.R. 393, 398 (Bkrtcy. E.D. Wis. 1999)).
IV

Discusión

A. Primer error
En esencia, el peticionario arguye que: (1) no existe solidaridad en este caso entre la Sociedad Legal de Gananciales y sus miembros, así como que (2) la deuda por Sentencia es estrictamente ganancial, regida por el Art. 1308 del Código Civil, por lo que sus fondos privativos no pueden ser llamados a responder.
La Resolución del Tribunal de Apelaciones, fechada el 12 de abril de 2013, la cual estamos llamados a revisar, primeramente concluye que la deuda constituye una obligación personal privativa del señor Fernández que podría estar sujeta al cobro de los bienes gananciales por medio del mecanismo de excusión provisto en el Art. 1310 del Código Civil. Ala vez, le impone responsabilidad solidaria a su esposa por ser cocausante del daño, así como a la sociedad legal de gananciales. Resolución del Tribunal de Apelaciones, págs. 5-6, Apéndice, pág. 28. Explica el foro apelativo intermedio *219 que al señor Fernández le corresponde pagar, puesto que vendió su finca privada y la obligación por incumplimiento de contrato es suya personal. Sin embargo, concluye que, igualmente, son responsables solidariamente su esposa y la Sociedad Legal de Gananciales. A esos efectos resuelve:
Por lo tanto, el señor Fernández Ramos responde con todo su patrimonio personal de la sentencia dictada en su contra en el litigio de daños y perjuicios. El monto de su responsabilidad es por la totalidad por ser uno de los co causantes del daño, a saber, el señor Víctor Fernández Ramos, la señora Teresa Guillen Lugo, y la Sociedad Legal de Gananciales compuesta por ambos, a los cuales se les impone responsabilidad solidaria. Id., págs. 5-6.
Partiendo de la premisa que tenemos ante nuestra consideración una deuda por daños, según el Art. 1054 del Código Civil, forzosamente hay que concluir que se trata de una obligación de naturaleza contractual cubierta por el Art. 1308 del Código Civil.(15) Por otra parte, existe una presunción de que las obligaciones contraídas por los cónyuges durante la vigencia del matrimonio son gananciales y corresponde al cónyuge que rechace tal responsabilidad así probarlo. WRC Props., Inc. v. Santana, supra, pág. 135.
En este caso no se ha dado tal cuestionamiento de parte de alguno de los cónyuges, por lo que no existe motivo para rechazar la naturaleza ganancial de la deuda. El peticionario apoya su recurso sobre la base ganancial de la deuda por Sentencia, mientras que la señora Guillén incluyó la totalidad de la obligación en su petición ante el Tribunal de Quiebras. Siendo así, se reputa ganancial y son los bienes gananciales los llamados a responder por los dineros fijados por el tribunal. “Para reclamar una deuda de carácter ganancial, debe el acreedor dirigirse contra los bienes ga *220 nanciales, esto es, demandar a la sociedad”. (Cita omitida). Pauneto v. Núñez, supra, pág. 595.
De otra parte, es preciso señalar que, contrario a lo intimado por el foro apelativo intermedio en su Resolución del 12 de abril de 2013, en el caso de deudas gananciales no existe disposición estatutaria que provea un mecanismo que permita cobrar subsidiariamente del patrimonio privativo de sus miembros. En conformidad con el Código Civil, la excusión de bienes opera únicamente como consecuencia de su Art. 1310. Es decir, se limita a aquellas situaciones en que no haya suficientes haberes privativos disponibles para cubrir obligaciones particulares de uno de sus miembros. Es únicamente entonces que la masa ganancial está llamada a responder subsidiariamente, pero condicionado a que se cu-bran primeramente ciertas necesidades gananciales básicas.
Igualmente, el hecho de que la deuda se repute ganancial no convierte a los miembros de la sociedad legal de gananciales en codeudores solidarios de esta entidad jurídica, como indicó el Tribunal de Apelaciones. Es preciso recordar que durante la vigencia del matrimonio el patrimonio ganancial coexiste independiente de los bienes privativos de los cónyuges. Por lo tanto, sus respectivas obligaciones y haberes se mantienen separados, lo que imposibilita que surja la solidaridad entre ellos.
En este caso, tanto el patrimonio ganancial de los esposos Fernández-Guillén, como el personal de la señora Guillén, están amparados por el procedimiento de quiebra. Es decir, los acreedores se ven imposibilitados de acceder a los fondos privativos de la señora Guillén, así como a los comunes gananciales para hacer válida la Sentencia que pesa en su contra. Los bienes privativos del señor Fernández no comparten esta protección. Conforme la doctrina, podrían responder en la medida en que éste sea personalmente responsable de la deuda que se intenta cobrar. Esto es, en caso de una obligación particular independiente de *221 aquellas que le corresponden en calidad de miembro de la sociedad ganancial como sería, por ejemplo, una situación de responsabilidad solidaria según atendimos en Campolieto v. Anaya, supra.
Conforme con la prueba, quedó establecido que, a pesar de que los esposos Fernández-Guillén conocían de antemano la imposibilidad de segregar el solar, no divulgaron este dato a los compradores antes de suscribir el contrato en cuestión. Por el contrario, les impusieron a los compradores la obligación de tramitar el permiso de segregación de la parcela adquirida. Tanto el señor Fernández como la señora Guillén firmaron el documento conjuntamente. Igualmente, surge que los recurridos no hubiesen comprado la propiedad de haber conocido este impedimento con anterioridad a suscribir el contrato.
En consonancia con lo anterior, los esposos Fernández-Guillén incurrieron en conducta dolosa grave. Es decir, participaron en los actos deliberados que propiciaron el vicio en el consentimiento de los recurridos y la eventual nulidad del negocio. De este modo, se conjugaron los requisitos cardinales del dolo grave que provocan la captación del consentimiento en la formación del contrato y permiten su nulidad, según dispone el Art. 1222 del Código Civil. A base de ello, entendemos que la conducta dolosa antes descrita sobre la cual se asienta la reclamación en este caso no debe quedar impune. Las circunstancias exigen que concibamos medidas especiales de justicia y equidad para atender los perjuicios sobrevenidos a los recurridos como resultado de la nulidad contractual que, de otro modo, quedarían al descubierto, aun cuando existan haberes en el patrimonio privativo. “La equidad, como se sabe, quiere decir algo que es justo”. Silva v. Comisión Industrial, 91 DPR 891, 898 (1965). Después de todo, nuestra función de impartir justicia va de la mano con la equidad, principio que permea todo el Derecho. S.L.G. Sánchez v. S.L.G. Valentín, 186 DPR 503, 515 (2012). “La equidad nació preci *222 sámente de la necesidad de atemperar el rigor de la norma, mediante un recurso a la conciencia del juzgador”. CMI Hospital v. Depto. Salud, 171 DPR 313, 325 (2007). Véase, además, BPPR v. Sucn. Talavera, 174 DPR 686, 695 (2008).
En situaciones extremas como la presente, no existe justificación para que uno de los esposos se escude detrás del manto ganancial con el propósito de evitar responder con sus bienes privativos por daños deliberadamente ocasionados mediante sus propios actos. Opinamos, por lo tanto, que en escenarios de responsabilidad ganancial por la conducta intencional grave de los esposos que resulte en el menoscabo de derechos, el perjudicado tiene la potestad de reclamar el resarcimiento de sus daños subsidiariamente de los bienes privativos de los cónyuges.(16) Considero, por lo tanto, que el señor Fernández está obligado a responder con sus bienes privativos por el pago de la deuda impuesta por la Sentencia emitida en su contra. La naturaleza de la conducta desplegada en este caso exige tal resultado.
Una vez fijado que su patrimonio responde por la acreencia al descubierto, surge la interrogante de si el señor Fernandez debe pagar la totalidad de la deuda. Ambos cónyuges incurrieron, conjuntamente, en la conducta dolosa que ocasionó los daños consignados en la Sentencia. El fallo del tribunal de instancia no aquilató sus respectivas culpas y tampoco estamos nosotros en posición de hacerlo. Por lo tanto, bajo las circunstancias particulares que se nos presentan, la responsabilidad de los esposos Fernández-Guillén en su carácter privativo frente a los recurridos es necesariamente solidaria.
Sin embargo, habida cuenta de que estamos trazando nuevos rumbos guiados por la equidad, se deben hacer ajustes para lograr un resultado justo para ambas partes *223 en el caso. Resultaría oneroso imponer toda la carga al señor Fernández cuando no procedió solo. De otra parte, de satisfacer la totalidad de la Sentencia, el señor Fernández estaría imposibilitado de recuperar dinero alguno de su cónyuge como secuela de las disposiciones del Código de Quiebras. Tomando en consideración lo anterior, como cuestión de justicia para todas las partes concernidas, opino que el señor Fernández debe responder con sus bienes privativos hasta un cincuenta por ciento (50%) de la deuda por la Sentencia que se intenta cobrar en este caso.(17)
B. Segundo error
Como segundo error, el señor Fernández alega que parte de los ingresos provenientes de los frutos y rentas de sus bienes privativos se utilizan para costear el Plan aprobado por el Tribunal de Quiebras.(18) A base de ello, argumenta que no es permisible la ejecución de su patrimonio personal para el cobro de la deuda en este caso puesto que, de hacerlo, se verían afectados los términos del Plan. No nos convence su planteamiento.
Primeramente, el peticionario no ha citado base legal alguna en apoyo a su posición. Tampoco ha sometido evidencia que demuestre que el Tribunal de Quiebras haya, en efecto, condicionado de manera alguna la disposición de sus haberes privativos. Según mencionamos anteriormente, los bienes personales del señor Fernández no se encuentran entre aquellos comprendidos en el caudal de quiebra o protegidos por el injunction asentado en la orden de descargo. Por el contrario, tal como discutimos anteriormente, sus bienes privativos están al margen del proceso de quiebra.
Según lo dispuesto en la Sección 541 del Código de *224 Quiebras, supra, el efecto del interdicto prescrito inicialmente por la See. 362 del Código de Quiebras y, posteriormente por la Sección 524, beneficia al cónyuge no acogido a quiebra únicamente respecto de su participación en el caudal ganancial. Y así debe ser, ya que éste no acudió al Tribunal de Quiebras a buscar protección de sus acreedores. Por lo tanto, al no acogerse al procedimiento de quiebra, los bienes privativos del señor Fernández están aptos para responder por aquellas deudas que subsistan en la medida en que el Derecho local así lo permita.
V
Por los fundamentos expuestos, disiento respetuosamente del curso seguido por este Tribunal.

 Copia de este documento, así como copia de la Demanda y la Sentencia dictada el 16 de marzo de 2010, se obtuvieron del expediente del Tribunal de Primera Instancia.

 A pesar de que originalmente se incluyeron los hermanos del señor Fernández como codemandados, esas reclamaciones no tienen injerencia con la controversia ante nuestra consideración.

 Sentencia Tribunal de Primera Instancia (Sentencia TPI), Determinaciones de Hecho, párrafos 8 y 19.

 Sentencia TPI, Determinaciones de Hecho, párrafo 16.

 El Artículo 1054 del Código Civil, 31 LPRA see. 3018 (Art. 1054 del Código Civil) dispone que “[q]uedan sujetos a la indemnización de los daños y perjuicios causados, los que en el cumplimiento de sus obligaciones incurrieren en dolo, negligencia o morosidad, y los que de cualquier modo contravinieren al tenor de aquéllas”.

 Las cantidades otorgadas se resumen como sigue:
Suma pagada por el solar $ 7,800*
Limpieza y mantenimiento del solar $ 22,000
Siembras $ 10,000*
Construcción de la residencia $ 62,668“
Daños y angustias mentales del señor Báez $100,000
Daños y angustias mentales de la señora Casanova $100,000
Honorarios de abogado $ 50.000
TOTAL $ 352,468
Más intereses devengados desde la presentación de la Demanda.

 En lo pertinente, el Art. 1308 del Código Civil dispone lo siguiente:
“Serán de cargo de la sociedad de gananciales:
“(1) Todas las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges.
“(2) Los atrasos o créditos devengados durante el matrimonio, de las obligaciones a que estuviesen afectos así los bienes propios de los cónyuges como los gananciales.
“(3) Las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges. Las reparaciones mayores no serán de cargo de la sociedad.
“(4) Las reparaciones mayores o menores de los bienes gananciales.
“(5) El sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges.
“(6) Los préstamos personales en que incurra cualquiera de los cónyuges”. 31 LPRA see. 3661.

 WRC Props., Inc. v. Santana, 116 DPR 127, 135 (1985).

 íd.

 El Art. 1310 del Código Civil dispone como sigue:
“El pago de las deudas contraídas por el marido o la mujer antes del matrimonio no estará a cargo de la sociedad de gananciales.
“Tampoco lo estará el de las multas y condenas pecuniarias que se les impusieren.
“Sin embargo, el pago de las deudas contraídas por el marido o la mujer con anterioridad al matrimonio, y el de las multas y condenas que se le impongan, podrá repetirse contra los gananciales después de cubiertas las atenciones que enumera la see. 3661, si el cónyuge deudor no tuviese capital propio o fuera insuficiente; pero al tiempo de liquidarse la sociedad se le cargará lo satisfecho por los conceptos expresados”. 31 LPRA see. 3663.

 En lo pertinente, la Sección 541 del Código de Quiebras, dispone lo siguiente:
*216 “(a) The commencement of a case [...] creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
“(1) [A]ll legal or equitable interests of the debtor in property as of the commencement of the case.
“(2) All interests of the debtor and the debtor’s spouse in community property as of the commencement of the case that is-
“(A) under the sole, equal, or joint management and control of the debtor; or
“(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor’s spouse, to the extent that such interest is so liable”. 11 USC sec. 541(a).

 La Sección 362 del Código de Quiebras provee como sigue:
“(a) Except as provided in subsection (b) of this section, a petition filed under section 301 [Voluntary cases], 302 [Joint cases], or 303 [Involuntary cases] of this title [...] operates as a stay, applicable to all entities, of—
“(1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
“(2) The enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title [...]”. 11 USC sec. 362. (Sec. 362 del Código de Quiebras).

 Excepto en circunstancias muy particulares allí especificadas, la See. 362 del Código de Quiebras aplica a todos los casos bajo el mencionado código. En los procedimientos cubiertos por el Capítulo 13 se dispone, además, que queda suspendido el cobro de las deudas del consumidor a los codeudores de aquel que inició el proceso de quiebra, brindándole una protección adicional en este tipo de deuda siempre y cuando se cumplan ciertas condiciones. Véase 11 USC see. 1301.

 La Sección 524 del título 11 del USC establece:
“(a) A discharge in a case under this title—
“(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged [...];
“(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor [...] and
“(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge

 Debido a que la Sentencia original del Tribunal de Primera Instancia, según modificada por el Tribunal de Apelaciones, advino final y firme, no pasamos juicio sobre la utilización del Art. 1054 del Código Civil para otorgar indemnizaciones procedentes de la nulidad de un contrato a causa de dolo grave, ni sobre el monto de las cuantías concedidas.

 En el supuesto en que uno solo de los cónyuges haya incurrido en tal conducta, el cónyuge inocente puede tratar de rebatir la presunción de ganancial de la obligación bajo los parámetros mencionados en WRC Props., Inc. v. Santana, supra.

 Claro está, se deberá acreditar a la deuda por cobrar cualquier abono efectuado como parte del procedimiento de quiebra.

 El Código Civil establece como gananciales “|l]os frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges”. Art. 1301(3) del Código Civil, 31 LPRAsee. 3641(3).